## ORGAN TATUM vs. BENJAMIN YOUNG.

*Error from the Circuit Court of Autauga County*—Before
the Hon. P. T. HARRIS.

When a cause has been tried by an impartial jury, although the Judge, on the application of the plaintiff, and against the consent of the defendant, may have rejected a juror for a cause, somewhat questionable as to its sufficiency, such rejection of the juror is not matter available in error.

The registration of a deed in another state, unless it appear that such registration was authorised by the laws of that state, implies notice to no one.

The certificates authenticating a recorded instrument from another state, do not constitute evidence of the laws of property, or of registration, in such state.

In this cause, which was an action of detinue for a slave, brought by Young against Tatum, the plaintiff challenged a juror for cause. The juror being sworn, stated, that he had been employed by the defendant, Tatum, to go to Selma after the slave in question; that he was instructed to take him at Young's, or wherever he might be found; that he, in company with another, found him at a grog shop, in whose possession he did not know, and brought him to Tatum, who paid him for the service the sum of fifty dollars. The defendant objected to the exclusion of the juror, but he was set aside by the court.

The slave sued for, among others, had been conveyed by Thomas Tatum to his son James, and his other children, by deed of gift, in 1816, in the state of Georgia. It had been recorded within two days of its date, and was certified by the clerk of the court, with the certificate of the presiding Judge.

The defendant who claimed under this deed, asked the court to instruct the jury, that if the plaintiff was a resident of Georgia at the time of the execution of said deed, and if said deed was recorded agreeably to the laws of Georgia, it was notice to the plaintiff there, and that his removal to this state did not divest him of the notice ; which instructions the court refused to give ; but charged the jury, that if the defendant relied on the recording in Georgia, he should have produced the laws of Georgia in evidence. The defendant also asked the court to instruct the jury, that from the certificates of authentication, showing the recording of the deed, they were authorised to presume, that it was recorded according to the laws of Georgia. This instruction the court also refused.

It is assigned for error, in this court, that the court erred in excluding the juror, and in the several opinions advanced in giving and refusing instructions to the jury.

PECK, for Plaintiff in error.

This is an action of detinue for a slave ; and the questions here to be decided, are set forth in the bill of exceptions. Young challenged a juror for cause. He was examined on oath, and stated that he had been employed by Tatum to go after a negro, (the one in controversy,) and had been told to get him at Young's, or any where else—that he got him at McGee's—that Tatum paid him fifty dollars for his services ; and that he had no interest whatever in the suit, and should never gain or lose by the event of the trial. The court rejected the juror, Tatum objecting. This is the first point. I insist that the court erred in thus excluding from the jury one against whom there was no legal objection. The party was entitled to have the rules of law complied with ; and if a juror was rejected, for cause, who was not legally disqualified, it is an error, which may be taken advantage of in this court. The juror having been employed to go after the negro amounted to no objection. He was paid for his

Tatum
vs.
Young.

services. And he expressly swears that he has no interest whatever in the event of the suit, and that he has no prejudice against either party. If a juror be interested—if he has formed an opinion on the merits of the case, or if he is prejudiced against either party, he may be rejected ; but none of these objections applied to this juror. That an illegal determination of the court in regard to the competence of a juror, is good cause of reversal, the court is referred to 1 *Johnson's Reports*, 316. This case shows, that if a party makes a legal objection, which is not sustained by the court, it is error. This rule must work both ways. The party has a right to be tried by the jurors that are legally summoned, unless they are excluded by the rules of law.

Now to show that the cause of rejection is not sufficient, the court is referred to 8 *Johnson*, 347—by which it appears, that where the juror has given a hypothetical opinion on the case, founded on rumors, it was not a sufficient cause of rejection. What cause was there for the rejection of the juror, in the case before us ? Because he had been in the employment of one of the parties ! And because the negro whom he was employed to go after (and for which he was paid) happened to be the one in controversy! And here too the juror was sworn, his oath relied on, and he swears that he has no interest in the case, and that he is not prejudiced. For a statement in detail of the causes for which a juror may be rejected, the court is referred to 1 *Cowen*, 438 ; from which it will be seen, that the case before the court does not come within any of those causes.

As to the other points : The defendant below claimed by virtue of a deed of gift. The donor was at the time of making the deed, free from debt. He was an improvident man, of a weak mind ; and the deed was made, at the advice of friends, that the children might not be deprived of a support. The deed was made in Georgia, the donees being minors, and living with the donor. A year or two afterwards, the donor removed to Alabama, the donees and the slaves, (of

whom the slave in contest is one,) remaining in Georgia. After another year or two, the donees with the slaves removed to this state, and lived with the donor, the donees still being minors. The deed was recorded in Georgia, two days after its execution. The plaintiff below lived near the donor and donees in Georgia, and in this state, and it was generally understood in Georgia, that this property had been conveyed to the children ; and one witness said it had been spoken of by the wife of the plaintiff below, and he believed, in the presence of her husband.

Upon the instructions asked for, a question arises as to the recording of the deed. I insist that there was no necessity, to render this title perfect, for the deed to be recorded, either in Georgia or any where else. Why should we suppose recording necessary ? It does not appear. If there exists no statute of registration in Georgia, requiring such deeds to be recorded, such recording is not necessary. A complete title passed at once. It cannot be pretended that the deed was void as to the plaintiff below, on the ground that he was a purchaser without notice ; because there is abundant evidence of his knowledge.

It is said that the statute of limitations of six years, and the statute of frauds of three years, were relied on ; but neither of those statutes apply, because the donees were minors.— The donees being minors, and living with their father, the possession given at first was as complete as it could be. And when the father left Georgia, the donees were left in sole possession of the slaves. I insist that this was a contract conveying as full a possession as could have been conveyed under the circumstances. It was not a verbal contract ; but it was made in writing. Nay, more—it was recorded, and we may reasonably presume that the law authorised recording. It can not be urged that the possession was with the donor in this state, because the donees, still being minors, lived with him.

Whether it were necessary to make the deed universally valid, that it should be recorded, or not, is immaterial in this

Tatum
vs.
Young.

case, because the knowledge of the deed is brought home to the plaintiff below. He purchased with full knowledge of the deed. Where an instrument is required to be recorded for the purpose of giving notice, although it be not so recorded, it is good against one who has notice. It is scarcely necessary to quote authority to establish this principle. The doctrine may be found in 9 *Johnson*, 162, and also in 10 *Johnson*,

GOLDTHWAITE.—The doctrine is not controverted.

PECK.—Then I contend that the deed conveyed an absolute title, and that any instruction making it necessary for the party to produce the laws of Georgia, must have been erroneous.

GOLDTHWAITE, *contra.*—The mass of testimony introduced in the bill of exceptions, has very little to do with the instructions required of the court; and yet it is upon the correctness or incorrectness of the court in regard to those instructions, that the question turns. It is clear from the instructions asked for, that the defendant below wished the court to state the legal effect of the recording of the deed in Georgia, without his showing what the laws of Georgia were. This the court very properly refused to do. The court were assuredly right in the position, that if the party relied on the legal effect of recording in Georgia, he must produce the laws of that state, and thereby show what the laws required in regard to recording, and what was its effect. Is there any thing in the instructions given to reverse the case? Could the court give a charge involving the laws of Georgia, without those laws being produced? In support of this view, the court is refered to a case decided in this court, *Mitchell vs. Mitchell*, June term, 1832, (opinion in manuscript) which establishes the principle, that no advantage can be derived from the registration of a paper in another state, without showing that the instrument was required to be recorded, and what effect the

laws of that state gave to such recording. Where then is the error? Does the certificate of the clerk prove any thing without showing the laws? The act of Congress to which the gentleman has so kindly referred me, has no application. This shows how a record may be authenticated; but such authentication cannot show that such record is authorised, or what effect is given to it by law.

But the point, in regard to the excluded juror, is the one, on which, it is presumed, the opposing counsel intended mainly to make battle. The juror, it seems, had taken forcible possession of the slave, at the instance of Tatum. If he were not partial to him, or prejudiced in his favor, would he have exposed himself to a criminal prosecution for stealing the slave; or to say the least, laid himself liable to damages for committing a violent trespass? If, as is laid down in the case quoted in *Wheaton*, a servant or a tenant of one of the parties may be excluded for cause, surely this man ought to have been excluded. But waiving this point, I would inquire if we had not a right to exclude one juror. The record does not show that we had exercised this privilege, in regard to any other juror, and that we had, will not be presumed by the court. It is contended that the cause of rejection was insufficient. Be it so: say that the court rejected him at our instance, without any cause, will that be sufficient to reverse the case, unless it be shown that we had exhausted our peremptory challenges?

But if it were admitted that a juror was set aside improperly, and a trial was nevertheless had by an impartial jury, is that such error as can be taken advantage of after verdict? The case is quite different where a juror is made to sit on the trial, who ought to have been excluded. In such a case, the trial is not had by a legal jury. I challenge the opposite counsel to show a single case in all the books, where a verdict has been set aside, merely because a juror was rejected that might legally have served. The courts are in the constant practice of excusing jurors merely because it is inconvenient

for them to serve.    They may sometimes exercise discretion improperly ; they may let an individual off who ought to have been retained ; but are the proceedings therefore erroneous?

The court is referred to the case of the *United States* vs. *Corney*—2 *Mason*, 106.    In that case, the life of an individual depended on the event of the trial.    Two individuals belonging to the society of Friends were excused, because of their peculiar views in regard to the causes which justify capital punishment.    The court, on a motion for a new trial, on the ground that the jurors were improperly excluded, over-ruled the motion ; and the Judge states, that he does not know that a new trial ought to be granted, if the jurors had been excluded for an insufficient cause, provided a trial was had by an impartial jury.    Such being the doctrine where human life was depending, it is still more obviously correct in a civil case.    It is not pretended that, in the case before the court, there was not a trial by an impartial jury, and yet the plaintiff in error would have the case reversed, because he could not have the man upon the jury that he had previously got to take and bring away the slave.

Are not the court authorised to use some discretion in rejecting jurors?    And where there is doubt of the juror's being impartial, it is safest to reject him.    But suppose the case where a juror says he is sick ; may not the court in its discretion discharge him ? or, if one of the parties says he is not sick, must there be a trial of the fact, by the introduction of witnesses?    I hold it a matter of small importance, who is rejected, provided the case be tried by an impartial jury.


PICKENS, in reply.

I feel myself in a great measure relieved from one part of the argument.    That the juror was excluded for insufficient cause, I consider as in effect admitted ; the gentleman having failed to controvert our showing on this subject.

It is of no importance in this case, whether the party has exhausted his peremptory challenges or not ; because, where

it is thought proper to get rid of as many of the jury as possible, it becomes an object to exclude as many for cause as possible ; because the right of peremptory challenge is still held in reserve, and may be afterwards exercised.   Besides, if the party had not exercised this privilege, if that were of any importance to the case; he ought to make it appear.

The opposing counsel admits that an erroneous decision in regard to the competence of a juror, may be a good objection ; but he will only admit it to be so on one side of the question. Now, it would seem to me, that a clear violation of the law, on either side, is fatal error.   The law requires jurors to be drawn in a particular manner.   Those thus drawn are legal jurors, and either party has a right to have his cause tried by these, unless they be excluded for legal cause, or by those challenges which the law allows.   Neither the' court, nor either of the parties has any right to exclude these regular jurors, and throw the trial on others.   I beg the court to observe too, that here the juror was in the box—he was a juror ; which distinguishes this case from that in 2 *Mason.*   There, the jurors had merely been summoned, and were set aside without being sworn.

The doctrine contended for by the gentleman would be a very dangerous one.   The judiciary of our country may not always be pure, and free from improper influences.   Suppose a case of political bias.   If a Judge can turn off one man without sufficient cause, he may turn off any number.   If it be observed that the jury is not politically orthodox, a few may be got rid of by peremptory challenges, and challenges for cause; and the rest of them may be disposed of by this kind of judicial discretion, of which we have just heard. Thus a jury may be obtained of the favorite political creed. Would there be nothing illegal in this ?   Would it not be breaking down those guards to the rights of individuals, which have been thrown around them by the law.

39

Tatum
vs.
Young.

The gentleman asks us for cases. To search after cases devolves on him. We show him the rule of law; it is for him to show that the rule is not obligatory. The case he has cited is not applicable on several accounts. That was on a motion for a new trial, which is a motion addressed to the legal discretion of the court; but where the question is raised by bill of exceptions and assigned for error, the case is different. But in the case cited, the hesitation of Judge *Story* is an argument in our favor.

On the other point, I contend that the court erred. The court was asked to charge the jury that, if the plaintiff below was a resident of Georgia when the deed spoken of was made and recorded, and if the same was recorded according to the laws of Georgia, it was notice to him and still binding on him. Was not that position true? No question was made about the laws of Georgia. A conformity to those laws was supposed in the instructions asked for. For what purpose are such instruments recorded but for the purpose of notice? Is not that the grand object of recording, wherever the laws require it? The court in refusing to give the instructions, in effect deny that notice in Georgia is also notice in this state.

The provision of the constitution, which requires that when certain requisitions are complied with, full faith and credit shall be given to the records of a state in any other state, merits consideration. I hold that the authentication of these records, according to the constitution, establishes them *as records*, and the legal inference is, that they were made to give notice of the transaction. Does not this then present a *prima facie* case in favor of the instructions asked for? The court was only required to instruct the jury that they were authorised to presume in favor of the sufficiency of the notice.

By Mr. Chief Justice SAFFOLD:
This is an action of detinue, which was brought by the present defendant, against Tatum, the plaintiff in error, for a negro slave named Jacob, in the Circuit Court of Autauga.

Tatum
vs.
Young.

The questions presented for revision, arise out of a bill of exceptions taken on the trial. It appears that the counsel for Young, the plaintiff below, challenged J. H. Gorman of the jury, for cause; that he being examined on oath, deposed that he had been employed by the defendant, Tatum, to go after the slave in question, to the town of Selma, for which said defendant paid him fifty dollars; that he, with one James Tatum, went to Selma, and found the slave in a grog shop. He further stated, that his instructions were, to get the negro at Young's, or elsewhere, as he could; that he did not know in whose possession the negro then was; found him without a pass, and had brought and delivered him to the defendant. He also said he had no interest in the suit, nor did he feel any. The counsel for Tatum objected to the rejection of the juror; but the court sustained the challenge.

The bill of exceptions also shows, there was proof, that in 1816, Thomas Tatum made a deed of gift of this slave to his children; that this was done in Georgia, and the deed was recorded in that state, in the county in which the donor and plaintiff resided at the time; that some time afterwards, the donor came to this state, and remained here one or two years, while the slave and children remained in Georgia; that in 1818 or 1819, the slave came here with the donor and donees, who lived together, and the slave with them, the donees being minors; that after the removal to this state, the plaintiff resided within a half or three quarters of a mile of the donor and donees, and the existence of the deed was generally known in their neighborhood in Georgia, and in this state; also, that it was spoken of by the wife of the plaintiff, and as the witness believed, in his presence, prior to the purchase of the slave by him. But the deed had not been recorded in this state.

Upon this evidence, the defendant below requested the court to instruct the jury, that recording the deed in Georgia, was notice to the plaintiff; also, that from the certificate

Tatum
vs.
Young.

of the clerk, that the deed had been duly recorded, and the presiding Judge's certificate, they had a right to presume, that the recording was according to the laws of Georgia, though the same were not produced. The court held, that if the defendant relied on the recording of the deed in Georgia, he should have produced the laws of that state in evidence ; therefore, refused the instructions requested.

It is now assigned for error—

1. That the challenge of the juror ought not to have been sustained.

2. That the instructions to the jury were erroneous, in respect to the effect of recording the deed in Georgia, and the necessity of producing the law of that state.

It is doubtless true, as contended for the plaintiff in error, that if the court overrule a valid objection to the competency of a juror, the circumstance of the party having gone on to trial on the merits, is not a waiver of the exception ; but he may still take advantage of it in error. Nor do I doubt, that the overruling a challenge to a juror, founded on a legal objection, would be error. The effect would be to compel a party to abide the decision of an illegal jury, the consequences of which might be greatly injurious. It does not, however, follow, that either the effect or consequences would be the same, from the rejection of a competent juror. But this point will be further considered after a slight notice of the validity of the objection to the juror in question, and of the authority relied up on to support it.

I readily concede, that the jury must consist of persons *omni exceptione majores.* Yet the law recognises a variety of objections founded alone on supposed bias or partiality. The authority to which the counsel for the plaintiff in error refers, admits, as principal cause of challenge to the polls *propter affectum,* not only remote kindred, and the slightest interest, direct or collateral, but also the circumstances—that the juror has before given a verdict in the same cause, or upon the same

a 1 Johns. 315
8 Johns. 347.

title or matter, though between other parties—that he was cho- <span style="float:right">Tatum<br>vs.<br>Young.</span>
sen arbitrator by *one* of the parties, and has entered upon the
examination of it—that he has declared his opinion of the case
beforehand—that since he has been returned, he has eaten or
drunk at the expense of one of the parties—that an action
*implying malice or displeasure* is pending between the juror
and one of the parties, &c.—See *Pringle* vs. *Huse*—1 *Cow-
en*, 432—6, *note* 1, and authorities there cited.

It is not contended that either member of the jury who tried
this cause was incompetent, or in any degree exceptionable ;
nor does it appear (if that could be material) that all were not
of the regular *venire*. The person rejected from the jury
may have been preferred by the party for whom he had been
employed to procure the slave, in consequence alone, of his
presumed bias or partiality, from having participated in the
wrong complained of in the action. Whether this person's par-
ticipation in the act did not subject him to an undue influ-
ence or partiality, equal to those referred to as causes of
challenge, may be well questioned. We are not to consider
the causes particularly enumerated in the books, as the only
legal grounds of challenge ; these are causes which have al-
ready occurred, and been held sufficient ; any other causes
which would equally affect the judgment or impartiality of
of the juror, would be equally available. But it is unneces-
sary to press this inquiry further, unless the rejection, if con-
sidered unauthorised, can furnish a ground for reversing the
judgment.

It is a general rule, that neither party can claim any ad-
vantage from any decision, or other matter, having no ten-
dency to prejudice him. Where a cause has been tried by an
unexceptionable jury, the law presumes no injury to either
party, for the want of any other person, in lieu of any of those
composing that jury. Should it happen, as supposed in ar-
gument, that the Judge, from political, or other unworthy mo-
tives, might at some time reject jurors to effect some sinister

or criminal design, and the circumstances disclose a probable injury to either party, the question on error, might be essentially different ; and at any rate, the Judge would be responsible to the state by impeachment, or such other mode of redress as the constitution has provided. I think it may be safely assumed that his powers in this respect would not be more dangerous than in many others, for the exercise of which, it is clear there can be no relief in error.

On this point it may suffice to refer to the one case only, which was cited in argument. In *United States* vs. *Cornell*,[a] Judge *Story* says : " Even if a juror has been set aside by the court for an insufficient cause, I do not know that it is matter of error, if the trial has been by a jury duly sworn and im panelled, and above all exceptions. Neither the prisoner nor the government in such case, can have suffered any injury." We are of opinion, that this rejection of the juror, under the circumstances of the case, is not a matter available in error.

[a] 2 Mason, 91.

2. On the second point of exceptions, former decisions of this court are perhaps conclusive. Unless the registration of such deed was authorised by the law of Georgia, and it has been recorded as directed by that law, the registration can imply notice thereof to no one    The principle was recognised in *Duffy* vs. *Frenage*, (January, 1834,)—in *Mitchell et al.* vs. *Mitchell*, (June, 1832,) the paper in question was a *deed of gift*, as in this case. We there held the following language : " To authorise the introduction of a copy of a deed, the plaintiff should show, that by the authorities of Georgia, such conveyances are required to be recorded ; and as a consequence thereof, that the clerk recording them, or keeping the record, had authority to certify copies. If the recording was *an extra official* act, the clerk had no authority to certify the copy as evidence. The legality of the procedure, is not to be presumed, because it is not the course of the common law."

The act of Congress relied upon in argument, is supposed to be that " Supplementary to the act entitled " An act to

prescribe the mode in which the public acts, records," &c. Tatum
shall be authenticated, passed in 1804.[a] This act directs, vs. Young.
that "all records and exemplifications of office books which are [a]Ing. D. 299.
or may be kept in any public office, of any state, not apper-
taining to a court, shall be proved or admitted in any other
court, or office, in any other state, by the attestation of the
keeper of the said records, or books, and the seal of his office
thereto annexed, if there be a seal, together with a certificate
of the presiding justice of the court of the county or district,
as the case may be, in which such office is or may be kept ;
or of the governor, the secretary of state, the chancellor,
or the keeper of the great seal of the state, that said at-
testation is in due form, and by the proper officer ; and the
said certificate, if given by the presiding justice of the court,
shall be further authenticated by the clerk or prothonotary
of the said court, who shall certify under his hand and the
seal of his office, that the said presiding justice is duly com-
missioned and qualified; or if the said certificate be given by
the governor, the secretary of state, the chancellor, or keeper
of the great seal, it shall be under the great seal of the
state in which the said certificate is made : and the said re-
cords and exemplifications, authenticated as aforesaid, shall
have such faith and credit given to them in every court and
office within the United States, as they have by law or usage
in the courts or offices of the state from whence the same are
or shall be taken."

It will be observed, that to bring this deed within the re-
quisition of the statute, the farther certificate of the clerk or
prothonotary was necessary ; and that this, at most, could
only make it evidence, entitled to such faith and credit in the
courts or offices of this state as it would have in Georgia by
the law or usage of that state. Such records or exemplifica-
tions were never intended to be made evidence of the law of
property in a different state ; but the mode of proving such
laws is otherwise prescribed.

Tatum
vs.
Young.

The rule which regards registration of deeds, as constructive notice to all concerned, is in itself, a rigid principle ; and it would be unsafe, first to presume, from the certificates of the clerk and Judge, that the law of Georgia authorised the registration of this deed, and then make this presumption constructive notice to Young of its existence. No question is presented to this court respecting the sufficiency of any other proof of notice.

The judgment below must be affirmed.