NANCY WARREN, Appellant, vs. WILLIAM DICKERSON AND RICHARD B. TUTT, Appellee — Appeal from Houston County.

Where husband and wife emigrated to Texas in 1840, bringing with them a negro slave, over whom the husband claimed and exercised ownership until the spring or summer of 1843, when he sold the same (the purchaser having no notice of the separate right of the wife to such slave), the wife could not maintain title to the slave derived under the will of her father, made in 1843, in Mississippi, where he was then living.

Under such circumstances, the fact that the negro had been bequeathed to her a short time before the sale could not strengthen her title without notice to the purchaser of such bequest. The record of the will in Mississippi could not constitute such notice.

If the title of the wife is acquired before the removal of herself and the property by the husband, and is valid in such place where so acquired, the failure to give notice of such title in the place of her new domicile cannot prejudice her rights.

The substantial facts of this case are as follows: Warren and wife arrived in Texas in the summer or autumn of 1840, bringing with them the slave in controversy; that Warren, the husband, claimed and exercised ownership over the slave, and that nothing was ever heard of the separate right of the wife to the slave until about the time that Warren sold the slave to Tutt, and then only a rumor that the slave belonged to Mrs. Warren; but not a single witness testified that this rumor was in circulation until after the purchase had been made. One of the plaintiff's witnesses, called by her to prove the acknowledgment of Tutt, proved that Tutt told him he had heard of the title being defective, but not until after he had purchased. The only evidence of payment was eighteen cows and calves. The sale purported to be for the consideration of five hundred dollars. The sale was made in the spring or summer of 1843. These are all the material facts in relation to the ownership of

the slave in Texas. It appeared further, by the evidence of the plaintiff, that her father, Mr. Pollock, had resided in the state of Mississippi. In February, 1843, he died, having left a will executed a short time before his death. This will was in evidence on the part of the plaintiff, and under which she claimed title. The material part of the will is as follows, i. e.: "I give to my daughter, Nancy M. Warren, a negro boy named Frank, the same which I have already loaned to her, and which with her husband, John Warren, she has already in possession. The same I give to my daughter, Nancy M. Warren, and her heirs, forever."

There was a verdict and judgment for the defendants, from which the plaintiff appealed.

MILLER for appellant.

OCHILTREE and JENNINGS for appellees.

Mr. Justice LIPSCOMB, after stating the facts, delivered the opinion of the court.

From the plaintiff's claim of title she does not stand in a more favorable position than her father would, were he alive, and contesting the validity of the purchase of the slave by Tutt from Warren, the husband. And it will not admit of controversy, that if he had been so negligent of his rights as to permit his property loaned by him to be brought off from Mississippi to Texas, without having it accompanied by notice of his ownership, directly or constructively, by having it recorded in the place to where the property had been conveyed, his right would not stand against the intervening creditors or purchasers without notice. His negligence in the assertion of his rights had given such color of title to Warren, the husband, as to give him a credit; and it would be a fraud upon a creditor or purchaser without notice to permit his title to prevail against them. The principle of law governing cases of this kind is too plain and too well established by authority to be questioned. It is clear that Mrs. Warren could not claim title under the will before the death of her father — *Nemo haeres viventis;* and the fact that the negro had been

bequeathed to her a short time before the sale could not strengthen her title without notice to the purchaser of such bequest.

, The record of the will in Mississippi could not constitute such notice. [See Crosby *vs.* Huston, 1 vol. Tex. R.]

The principle decided in the several cases of the United States Bank *vs.* Lee, 13 Peters' R. 107; Crenshaw *vs.* Anthony, Martin & Yerger, 110; and Parks *vs.* Willard, 1 vol. Tex. R. 350, when understood, is that if the title of the wife was acquired before the removal of herself and the property by the husband, and was valid in such place where so acquired, the failure to give notice of such title in the place of her new domicile cannot prejudice her rights. The exception is believed to be founded in the wisest policy growing out of, and essential to, the relation of husband and wife. She is required to accompany him in his wanderings through life, and to make the home of his choice her home; and it is not consistent with the harmony of the relation, that she should proclaim the fraud of her husband when he offers to sell her property as his own. Had, then, the plaintiff's title been valid before removing to Texas, it could not have been destroyed by any act of the husband, or by silence on her part in not proclaiming her rights. If she has not enjoyed what her father may have intended for her special use, it does not arise from any defect in the laws, or the administration of them, but from the negligence of a parent and the profligacy of a husband.