## O'NEILL vs. HENDERSON, TRUSTEE, &C.

Whenever a perfect title, according to the laws in force in the State in which it is made,
vests property in the wife, or in trustees for her use, such title remains in her not-
withstanding any change of the residence of the husband, who may exercise an ap-
parent control and ownership of the property, or any act of fraud or negligence on
the part of the trustee or the husband; nor is she required to do any act to protect
her title—such as recording in this State the evidence of her title.

A trustee, who brings suit as such, is not required to offer proof of his acceptance of
the trust—the bringing of the suit and acting as such. are sufficient.

Where the separate property of the wife was levied upon and sold for the husband's
debts, no demand is necessary to entitle the trustee to recover against the purchaser
in an action of detinue.

Where interrogatories are filed under the 9th, 10th, 11th and 12th sections, *ch.* 55, *Dig.*,
and notice is given to the adverse party of the application for a commission, he is not
entitled to notice of the time and place of taking the depositions.

### *Appeal from Drew Circuit Court.*

Hon. SHELTON WATSON, Circuit Judge.

S. H. HEMPSTEAD, for the appellant.    1. The depositions taken
in Tennessee, should have been suppressed.    The application was
to take testimony in an action of replevin, and this was an action
of detinue.    5 *Eng.* 420.

.2. It was a proper enquiry as to whether the negro woman and
her child were conveyed to Burk's wife, to enable her husband to
avoid payment of his just debts, and among them the debt due to
the appellant.    5 *Paige* 586.

3. Henderson did not show any right of action in himself.    If
any one had such right, it was Burk and wife, and not this sham
and pretended trustee, who, at all events, had nothing but a
naked legal title.    *Digest* 702.

4. The Court should have granted a new trial for the reasons

stated in the motion. O'Neill purchased at sheriff's sale; and Burk, the husband, had such right as was subject to execution. 3 *Eng.* 302; 2 *Litt.* 79; 7 *Ala.* 32.

PIKE & CUMMINS, for appellee. No new trial can be granted, because the verdict is clearly in accordance with the merits of the case. *Sparks vs. Beaver,* 6 *Eng.* 630; 7 *Ib.* 651.

No notice is necessary where depositions are taken on interrogatories. *Secs.* 9, 10, 11, *and* 12, *ch.* 55, *Rev. Stat.*

Removal from one State to another, does not affect the character of a loan. *Smith vs. Jones,* 3 *Eng.* 109.

No demand was necessary before suit. *Beebe vs. DeBaun,* 3 *Eng.* 510; *Prater vs. Frazier,* 6 *Eng.* 249.

Where property is conveyed in trust for wife, her possession is that of trustee, and so far from being inconsistent with deed, is according to the very objects of the transaction, and no presumption of fraud can be indulged.

Mr. Justice WALKER delivered the opinion of the Court.

This was an action of detinue, brought by Henderson, as trustee for Nancy Burk and her children, against O'Neill, for a negro slave.

The trial was had upon the plea of the general issue, and a plea of property in the defendant. Judgment was rendered for the plaintiff. Various exceptions were taken to the opinion of the Court upon the trial, all of which were presented upon a motion for a new trial, which was overruled, and, upon exceptions to the opinion of the Court in overruling the motion, are made part of the record, and assigned as grounds of error in this Court.

As the correctness of the decision of the Court below, in giving the instructions asked by the plaintiff, and refusing to give those asked by the defendant, must depend upon the nature of the plaintiff's title as trustee, and the effect of our statute of frauds upon it, we will proceed to examine the facts and settle the questions of law arising upon them.

In the year 1843, William Hack, a resident of the State of Tennessee, loaned a negro woman to his sister-in-law, Mrs. Nancy Burk, who, with her husband, John F. Burk, then resided in the State of Mississippi. In the fall of 1846, or the winter of 1847, Burk and wife, having the woman slave still in possession, removed to Drew county, Arkansas; the woman, in the meantime, having born " Joe," the property now in dispute. On the 20th of April, 1847, Hack conveyed said woman and her child Joe to the plaintiff, Simeon Henderson, in trust, for the sole use and benefit of Mrs. Burk during her life, and to her children after her death, for their separate use, maintainance and support, wholly free from the debts and liabilities of the husband, and denying him the right to exercise any control whatever over said slaves, or to hire or sell them. This conveyance by deed, of the date above, was duly acknowledged and recorded in the county of Marshall, and State of Mississippi, the then residence of Henderson, the grantee. Burk and wife still continued to reside in Arkansas with the slaves in their possession, and apparently under the control of the husband and wife, in the performance of ordinary household duties, until the 26th of June, 1849, at which time the boy Joe was taken in execution to satisfy a debt contracted by Burk with O'Neill, the appellant, on the 27th of April, 1849, for $66 47. The deed from Hack to Henderson was never recorded in Arkansas; nor was it known here that such conveyance existed. Under this state of facts, the question of law, intended to be raised by the instructions asked by the defendant, and refused to be given by the Court, is, whether the deed was or not void, under the 7th sec., ch. 104, Digest, as against creditors and purchasers for want of registry in this State.

As between parties in interest, competent to assert and protect their legal rights, it would seem clear that the grantee holding the title to the property, by suffering the property to remain in the possession of a third person without notice of his title, could not hold against a creditor who had, upon the presumption that the title and true ownership were with the possession, given credit

to him who held such property in possession, or against an innocent purchaser, who buys upon such presumption, and in good faith pays his money for the property.   But in a case like the present, where the real party in interest is a *feme covert*, subject to the control of her husband, and for the most part, by reason of her coverture, without power to assert and protect her interest, and rights, the law has thrown around her its protection, and not only relieves her from acting, or from the consequences of her acts, but also protects her against the negligence, or the abuse of the trust by the trustee.   If such was not the case, the trust would amount to nothing, the trustee having a mere naked legal title in the property, but which (as is the case in this instance) is not to remain either in his possession, or under his control, but to be used and enjoyed by a wife and helpless children, made by the law, as well as their helpless dependance, and their affection, subject to the control of the husband, over whose character for prudence and discretion, by the mere fact of executing such a deed, a shade of doubt is cast: who may, at pleasure, change his residence, involve himself in debt or even sell the property.   It would be hazardous to the interest of the wife, even with the greatest vigilance, on the part of the trustee, to require him to follow up the trust property, and have his interest in it made known of record ; but even then, if the statute of frauds may be successfully pleaded against her rights, no vigilance on her part, or on the part of the trustee, would be sufficient to protect her interest, because the husband might remove the property, and contract with innocent purchasers and creditors to the utter overthrow of the rights of the wife.

That, under circumstances such as the present, and perhaps in this case, the husband may perpetrate fraud upon innocent creditors and purchasers, is very true, and it may seem wrong to protect the property against their equitable claim.   But, then, when we consider the situation of the wife, how utterly impossible it is for her, in view of her relation to her husband, to protect her rights, it would be equally wrong to hold her responsible for the

acts of her husband. The most important question is, did the wife acquire an interest in the property as *cestui que trust*, by a full compliance with the laws of the State, in which the contract was entered into at the time it was executed. If so, we apprehend that no act of the trustee, or of the husband, nor would any apparent hardship, growing out of such act, divest her of her interest in the property. In the correctness of this position, we feel fully sustained by the opinion of the Supreme Court of the United States, (*Bank vs. Lee et al.*, 13 *Peters* 107.) The facts in that case were: That, in 1809, Richard Bland Lee, then a resident of Fairfax county, Virginia, with his family, conveyed several slaves to certain trustees, in trust, for the sole use of his wife; which deed was duly acknowledged and recorded in said county; afterwards, Lee moved with his family to Washington City, in the District of Columbia, and took with him the slaves so conveyed in trust, and exercised ownership over them as his, and executed a deed of trust to the Cashier of the United States Bank for said slaves, to secure the payment of $6,000, money borrowed of the Bank. The deed of trust executed in Virginia for the use of Mrs. Lee, was never recorded in the District of Columbia, nor had the Bank any notice whatever of the claim of Mrs. Lee to the slaves until long after the deed was executed to the Bank, and after the death of Mr. Lee.

Under this state of case, it was contended for the Bank, that, notwithstanding Mrs. Lee's title may have been perfect, and well protected against the statute of frauds, under the registry act of Virginia, whilst the property remained in the possession of Lee, in that State, yet when removed to the District of Columbia, the statute of Maryland, which requires all contracts for goods and chattels, whereof the vendor shall remain in possession, to be recorded, or else to be void as to purchasers, operated upon the Virginia title of Mrs. Lee, and defeated it for the benefit of purchasers from the husband. When answering this position, Judge Catron, who delivered the opinion of the Court, said: "The statute has no reference to a case where the title has been vested

by the laws of another State; but operates only on sales, mortga-
ges, and gifts, made in Maryland.   The writing shall be recorded
in the same county where the seller shall reside when it is exe-
cuted.   The seller, Richard Bland Lee, residing in Virginia, it
was impossible for Mrs. Lee to comply with the act; that the
Virginia deed secured to Mrs. Lee the same right here, that it
did in Virginia, we apprehend to be, to some extent, an ad-
judged question."   The Judge then cited *Smith vs. Burch*, (3
*Harr. & John.;*) *Crenshaw vs. Anthony*, (*Martin and Yerger*
110;) and closes his opinion thus: "The deed vesting the pro-
perty in Mrs. Lee's trustees, having been duly recorded in the
manner required by the statute, it was effectual, according to the
laws of Virginia, to protect the title against subsequent creditors
of, or purchasers from, Richard Bland Lee."

The case of *Crenshaw vs. Anthony*, was an action in detinue
for a slave sold by a judgment creditor to satisfy a debt contracted
by the husband, whilst the slave was in his possession.   The deed
of trust, securing the property to the use of the wife, was executed
in Virginia, and there duly admitted to record, all of the parties
and the property then being in Virginia.   The husband moved
to Tennessee, with the slave in his possession.   The deed never
was recorded in Tennessee, nor had the creditor any notice of the
wife's title.

The Supreme Court of Tennessee held, that the deed made in
Virginia, separating the title and the possession, was of a charac-
ter to be operated upon by the Virginia statute, and had the deed
not been recorded there, as to creditors and purchasers, the title
would have been deemed to be with the possession; but, having
been recorded there, a title, fair and unimpeachable, vested in the
trustee, and *cestui que trust*, and, being valid in Virginia, the
statute of Tennessee could not affect it; and that the wife's in-
terests were not affected by her silence in regard to the title,
which she held to the property.   These decisions distinctly an-
nounce the principle, which we think must govern the decision
of the case now before us, which is, that if a perfect title is ac-

OF THE STATE OF ARKANSAS.     241

TERM, 1854.]          O'Neill vs. Henderson, Trustee, &c.

quired in accordance with the laws of the State in which the
parties reside at the time the contract is made, and where it is
made, that such title is not affected by neglect or omission of the
trustee, the husband, or the wife, to record such deed in the State
to which the property may be removed, or where it may be sub-
sequently held.  Some importance seems by the Court, in the
case of *Crenshaw vs. Anthony*, to be attached to the fact that the
deed was recorded in Virginia, and it is said, that, had that not
been the case, registry in Tennessee would have been necessary
in order to prevent the operation of the statute of frauds in that
State.  If the Court intended to assert, that registry in Virginia
was necessary in order to make the title in the trustee perfect,
then this decision rests upon the ground assumed in the case of
the *Bank vs. Lee*:  That if the title is perfect, the wife is not
bound to record such title in every State to which her husband
may remove, and if it is perfect in the State where it is made
without registry, that it is a matter of no consequence to the
creditors of another State, whether it was or not recorded in the
State where it was executed, because it is very evident that it
would be no notice to them and no compliance with the laws of
the State to which the property may be removed.  We have re-
marked upon this part of the Tennessee decision, that we may
avoid the inference, which might be drawn from silence, that we
consider registry, in the State where the right accrues, essential
to protect the rights of the wife only so far as may be necessary
to make her title perfect in the property.  And it has been deemed
the more necessary to this, from the fact that the Supreme Court
of Texas has made this part of the decision of the Court, in the
case of *Crenshaw vs. Anthony*, the basis of their decision of
the case of *Warren vs. Dickinson* and *Tutt*, 3  *Texas Rep*. 460.
In that case, Warren and wife resided in Texas, and had in their
possession a slave belonging to the father of Mrs. Warren, who re-
sided in the State of Mississippi, where he died, and by his will
bequeathed this slave to his daughter, Mrs. Warren.  After the
death of the testator, Warren (the husband) sold the slave to the

BB31

defendant, who had no notice of the title of Mrs. Warren. (unless the recording of the will in Mississippi should be held such). Under this state of case, the Supreme Court of Texas decided against the title of the wife to the slave; not because of any defect in the will, or that it was not in all respects a valid will according to the laws of Mississippi, where it was made; but upon the ground that the property and the claimant (the wife) should have been resident in Mississippi at the time the will took effect and was recorded.

Now it is evident, if this be the case, it cannot be for want of title in Mrs. Warren in the slave, unless it could be maintained that property cannot be devised unless it is actually in the date where the devise is made, and where it took effect, and where the devisee also resided; which is certainly not the law. But it must be upon the ground that registry, under the circumstances of the case, in the state of Mississippi, was equivalent to registry in Texas, in protecting the registry of the wife to the property there, and if so then as the will was registered in Mississippi before the sale of the slave to the defendant, it would seem to follow that the Court should have charged them with notice of the wife's title, and have decided in her favor; but as such was not the decision of the Court, and as it was held that the notice, to be effectual, should have been given whilst the property was in the State of Mississippi, and before the removal of the wife to Texas, we must presume that the Court, in fixing the notice at that date, considered it in some respects as essential to the validity of the title itself, when it took effect in Mississippi, and by so considering that decision, it may be reconciled with the rule held in the *Bank vs. Lee;* and if considered otherwise we must dissent from it, in so far as it may conflict with the opinion already expressed: that wherever a perfect title, according to the laws in force in the State in which it is made, vests property in the wife or in trustees for her use, such title remains in her notwithstanding any change of the residence of the husband, who may exercise an apparent control and ownership of the property or any act of fraud or negli-

gence on the part of the trustee or the husband; nor is she required to do any act on her part to protect her title. But the law, in consideration of her limited rights as a *feme cevert*, so far throws around her title its protection as to protect it from the consequences incident to such negligence or abuse of trust.

It is very true that this rule may result in cases of hardship to creditors and innocent purchasers, who, finding the property in the possession of the husband, may well presume the title to be in him: but, then on the other hand, without this rule, the greatest wrong might result to the wife, who for the most part is deprived, under the laws, of the power to hold a separate and distinct ownership, and who, on account of her marriage relations, public policy would not compel to expose the fraud perpetrated by her husband by gaining credit upon the faith of the property as being his. In view of these principles, a brief review of the facts of this case will enable us to decide the material question involved in it.

We have seen that the deed of trust was executed in the State of Mississippi, the residence of the trustee, and was there duly authenticated and recorded. This, in our opinion, was sufficient to vest the legal title in the trustee for the use therein expressed. It is true that a few months before that time, Burk and wife had removed with the slave to Arkansas, but this we have said did not affect the validity of the title. The debt, for the satisfaction of which the boy was seized and sold, was not contracted until more than two years after the execution of the deed of trust. Under this state of case, even under the rule as held, in *Warren vs. Dickinson,* by the Supreme Court of Texas, if the slave had been in Mississippi, and the wife, the *cestui que trust,* had also resided there, when the deed was executed and recorded, the subsequent removal of the property to Arkansas would not have affected the wife's title, and, if not there, would it if made a few months after? Was the creditor in the first instance affected with notice of a deed recorded in Mississippi? If so, why not when the deed was recorded a few months after? There can certainly be no good reason, because the same rule of law that required him to look to a registry beyond the limits of

this State at one time, would also at another, and as his contract was made long after the execution of the deed, he would be held to notice of it. But the truth is, that the registry of the deed in Mississippi was no notice to the creditor in Arkansas, no matter when made. At the time of the levy, the purchaser had notice of the title of Mrs. Burk; and, by a jury called to try the right of property, it was found not to be subject to the payment of Burk's debts, so that he purchased with the fullest notice of the trust, but the question does not turn upon notice at the time of the levy and sale, but upon the question as to whether the trust title was void under our statute for want of registry in this State, and we have said that it was not.

From the view thus taken of the rights of the plaintiff as trustee, it follows that the 1st, 2d, 3d, 5th and 7th instructions were properly refused by the Court below; all of them growing out of the supposed effect of the statute of frauds upon the plaintiff's title. It was not necessary, in order to maintain the action, for the plaintiff to offer proof of his acceptance of the trust; the bringing of the suit, and the acting as such were sufficient; therefore, the 4th instruction asked was properly overruled.

The 6th instruction was also properly overruled, because the property was tortiously taken from the possession of the *feme covert*, and although the tort was waived, and the suit brought in detinue, no demand was necessary to entitle the plaintiff to recover. *Schulenburg vs. Campbell*, 14 *Miss. Rep.* 491; *Prater vs. Frazier and wife*, 6 *Eng.* 249.

The remaining question relates to the admission of the deposition of a witness over the objection of the defendant. The principal ground of objection to the deposition is, that it was taken without notice to the defendant. The deposition was taken under the provisions of the 9th, 10th, 11th and 12th sections of the 55th ch., *Dig.*, 433, which provide for the taking of depositions upon petition to the Court. The order was granted upon petition for leave to take depositions upon interrogatories and cross-interrogatorion. The 11th section provides, that the interrogatories shall

be drawn up and signed by the parties under the direction of the Court, and if either party shall refuse to join in such interrogatories, such refusal shall not prevent the issuing of the commission. Under the provisions of this statute, when the interrogatories are agreed upon by the parties and signed by them, or where one of the parties shall refuse to join, the effect of which is an abandonment of his right to file cross-interrogatories, there can be no necessity for notice of the time and place for taking the depositions, because the evidence is confined to the particular interrogatories propounded, and the officer, or person appointed by the Court to take the depositions, is charged with the due execution of the commission, and his conduct can in no wise be influenced by the presence of either party.

It seems that the defendant was duly notified of the application for the rule in this case, and thereafter must be presumed to have had notice of the further action of the Court upon the petition. His failure to file cross-interrogatories or to sign the interrogatories propounded by the plaintiff, could not, under the 11th section of said act, prevent the issuing of the commission, or become the grounds for objection to the depositions when taken. There was no valid objection to the deposition upon this ground, but, even if there was upon this or either of the other grounds relied upon, it could in no wise change the final determination of this case, because, independent of that deposition, there was clear and conclusive proof, to which it was cumulative, of the plaintiff's right to recover. And when this is the case, and the question is presented to the Circuit Court, as to whether the party should have a new trial, that Court may well refuse to set aside the verdict and grant a new trial under the rule repeatedly recognized by this Court, that where upon the whole case, as shown by the evidence, irrespective of that objected to as inadmissible, the verdict is right, it should not, because of the improper admission of such evidence, be reversed. (*Payne vs. Bruton*, 5 *Eng.* 60.) Affirmed.