McNEILL vs. ARNOLD ET AL.

The Circuit Court has power to amend its record, so as to make it speak the truth, &c. (*King & Houston vs. State Bank*, 4 *Eng.* 185; *Arrington vs. Conrey, ante,* 100.)

Slaves are conveyed to a trustee for the separate use of the wife, and upon her death to be divided among her heirs; upon the death of the wife, the trust is executed, and an action for the recovery of the slaves must be brought in the name of the heirs, and not of the trustee.

A trustee, after the trust is executed and his interest in the trust property is terminated, is a competent witness in a suit affecting the title.

The statute law of another State can be proved only by the production of the statute, and not by parol; but the unwritten laws, custom, usage, practice, &c., of other States, may be proved by the testimony of witnesses skilled therein.

A deed executed in another State, in the absence of any testimony that the laws of the State authorized its registration, is not admissible in evidence, merely upon certificates of its acknowldgement and registration, without other proof of its execution.

If a deed be duly executed, &c., in another State, according to the laws thereof, it is unnecessary, to protect the rights of the grantee, that it should be recorded in this State, upon the removal of the parties and the property. (*O'Neill vs. Henderson*, 15 *Ark.* 235.)

Where a deed or instrument of writing is read in evidence, without competent proof of its execution, and such proof is afterwards made, though it was irregular to permit it to be read, the irregularity is cured by the proof afterwards made.

When the question propounded to a witness, indicates the answer it is desired he should make, or furnishes him with one favorable to the point sought to be established by the examiner, it is leading. (*Clark ad. vs. Moss et al.,* 6 *Eng.* 741; *Pleasant vs. State,* 15 *Ark.* 624; *Rogers vs. Diamond,* 13 *Ib.* 473.)

Where property is in the possession of another, who has purchased and uses it as his own, the owner may bring replevin for it without a previous demand. (*Pater ad. vs. Frazier*, 6 *Eng.* 257; *O'Neill vs. Henderson*, 15 *Ark*, 235.)

Where the wife has a separate estate in slaves, and the husband and wife live together, the possession of the husband is the possession of the wife.

Where a party suing for a chattel proves that he purchased it from one in possession, he makes a *prima facie* case of title, and the *onus probandi* is shifted to the opposite party.

As a general rule the possession of the agent is the possession of the principal.

After the plaintiffs had proved, by the agent of the person under whom they claimed title to the personal property, that he, as agent, had purchased the property for his principal, the defendant, by the same witness, on cross-examination, proved that, at the time of the purchase, a bill of sale was taken: HELD, That the plaintiffs were not required to produce the bill of sale.

If the authority of the agent is shown to be in writing, the writing must be produced and proved, or its non-production accounted for, in order to admit of secondary evidence of the agency.

Where the husband and wife bring an action of replevin for the slaves of the wife, and they are taken under the writ and delivered by the sheriff to the husband, this is such a reduction into possession by the husband as, for the purposes of the suit, will perfect his title to the slaves, in the event of the wife's death after the seizure and delivery, and before judgment.

The defendant cannot take advantage of a variance between the declaration and writ, after a plea in bar to the action.

*Appeal from Dallas Circuit Court.*

Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL & CARLTON, for the appellant. A demand was necessary before the institution of this suit, and the court clearly erred in refusing the instruction upon this point. 2 *Greenleaf, chap. on Trover, page* 532 ; *Beebe vs. DeBaun,* 3 *Eng.* The case of *Prater and wife vs. Frazier and wife,* 6 *Eng.* 249, does not overrule the case of *Beebe vs. DeBaun,* nor is there any inconsistency between the two ; because, in the former case, the defendant had acknowledged the plaintiff's title, and yet made a sale of the property, which was an act of conversion. In this case, the defendant was a purchaser, acting in good faith, and believing the property to be his own.

The court erred in permitting the deed of trust to be read to the jury, upon the parol evidence of the witness as to the laws of Mississippi ; and as the deed was not of such a nature as was required by law to be recorded, the record is incompetent to prove the existence or execution of the original. *Brown vs. Hicks,* 1 *Ark.* 232.

The contents of a written instrument cannot be proved by a witness without accounting for the absence of the original, (*Dermont vs. McCracken*, 6 *Blackf.* 356,) and all the testimony of Glover, as to the purchase of the slaves by him for Burke, should have been rejected without the production of the bill of sale, which was the best evidence of the purchase ; and also, of the authority of Glover to purchase for Burke, without the production of the letter of Burke constituting him his agent. *Mordecai vs. Beal*, 8 *Port.* 529; *Planters and Merchants Bank vs. Willis*, 5 *Ala.* 770; 4 *Blackf.* 164.

Glover was incompetent to testify, as a witness, and the suit should have been brought in his name.

WATKINS & GALLAGHER, and COMPTON, for appellee. The children of Mrs. Burke were the proper parties to bring this suit. Upon her death the title to the property passed out of the trustee, and vested in them, without any transfer on his part. *In re of the estate of Williams*, 1 *Maryland Chan.* 25; 1 *Kelley* 381.

A demand before suit brought was not necessary. *Beebe vs. DeBaun*, 3 *Eng.* 510 ; *Frazier and wife vs. Prater ad.*, 6 *Eng.* 249; 5 *Sanford Rep.* 157; 1 *Smedes Rep.* 304..

Where the rights and powers of a trustee have ceased, and he has no interest in the matter, he is a competent witness. *Main vs. Newman*, *Anthen* 11; *Johnson vs. Cunninghan*, 1 *Ala.* 249; *George vs. Kimball*, 24 *Pick.* 234; 4 *Dev. & Bat.* 442.

The bill of sale to Samuel Burke, and the agency of Glover constituted by letter were not necessary to be produced—the possession of the defendant, and the rights of the plaintiff being derived from the same source.

The possession of Burke was the possession of Glover as trustee, (*O'Neill vs. Henderson*, 15 *Ark.* 235,) so that no rights accrued by adverse possession.

The original deed was sufficiently proven without Glover's testimony. Stith proved that under the laws of Mississippi, where it was executed, it was entitled to be admitted to record ; (*O'Neill*

*zs. Henderson, ub. sup.*); but Glover's testimony proves it beyond a doubt.

Mr. Chief Justice ENGLISH delivered the opinion of the Court. A preliminary question is to be settled in this case.

The case was brought here, on appeal, at January Term, 1855, and after it was docketed and before joinder in error, the counsel of the appellees obtained a continuance, for the purpose of procuring an amendment of the record in the court below, and bringing up a transcript thereof by *certiorari*. At the July Term following, having, in the meantime, procured the amendment below, they moved for a *certiorari* in order to perfect the record here. Thereupon, a transcript of the amendment was filed, with an agreement of the counsel of the parties, that it should have like effect, as if brought here on *certiorari*.

The counsel for appellant insist that the court below had no power to make the amendment, after the lapse of the term at which the cause was tried, and that the matter contained in the transcript of the amendment, ought not to be treated as part of the record here.

The matter of the amendment is this: It seems that, on the trial of the cause, the appellees read in evidence the original trust deed from Samuel Burke to Nathan Glover, executed, acknowledged and recorded in Mississippi, under which they claimed title to the slaves sued for. After the trial, they obtained leave of the court to withdraw the original deed, on filing a copy, desiring to use the original in another suit pending in Ouachita county. They accordingly withdrew the original, substituting in lieu thereof, a certified copy of the deed, from the record thereof, in Mississippi. But the clerk omitted to enter of record the order of court, permitting the original deed to be withdrawn, &c., and failed to note the filing of the copy substituted. That, in consequence of these omissions of the clerk, and the copy of the deed from the Mississippi record, so substituted for the original, being transcribed in a bill of exceptions taken at the trial, and

brought up in the original transcript, it was made to appear that the appellees read in evidence, upon the trial, the record copy of said deed, instead of the original, &c.

The court below, in term, upon application of the appellees, on due notice to the appellant, and upon satisfactory proof of the facts stated above, ordered the original deed, and certificates attached thereto, to be re-filed and made part of the record, as of the date it was originally filed on the trial of the cause.

A transcript of the proceedings to amend the record, including the original deed, &c., so re-filed, was afterwards made out, and brought here, as upon *certiorari*, as above stated.

The power of the Circuit Court to amend its record, so as to make it speak the truth, and the mode of doing it, have been sufficiently discussed and settled in the case of *King & Houston vs. The State Bank*, 4 *Eng. Rep.* 185, and *Arrington vs. Conrey et al.*, decided at the present term. The proceedings to amend in this case, being substantially in conformity with these decisions, we shall treat the matter of the amendment, as part of the record in the cause here.

ON THE MERITS, &c.—In August, 1853, Rufus E. Arnold, (suing in right of his wife Mildred M.) and Mildred M. Arnold his wife, and the said Rufus E. Arnold suing as the guardian of Joel Burke, Samuel Burke, and Malcom McNeill Burke, minors, &c., brought an action of replevin, in the *detinet*, against Hector McNeill, in the Dallas Circuit Court, for the recovery of a negro woman named *Lizzy*, and her children called *Eliza, Aga, Ann, Phœbe* and an *infant child* without a name.

The declaration alleged that the defendant, on the 1st day of September, 1851, received the woman *Lizzy*, and her children *Eliza, Aga, Ann* and *Phœbe*, the property of the plaintiffs, from one Virgil J. Burke, to be delivered to the plaintiffs, with their increase, on request, &c., and that, after the reception by the defendant of the woman *Lizzy*, she gave birth to a child, the name and sex whereof were unknown to the plaintiffs, and which from its birth had been, and was still, in the possession of defendant,

&c. ; and that the defendant, although often requested so to do, had not delivered said slaves, or any of them, or said increase, to the plaintiffs, &c.

The writ, reciting that the plaintiffs complained that the defendant unjustly detained from them the woman Lizzy, and her *four* children, Eliza, Aga, Ann, and Phœbe, commanded the sheriff, upon the plaintiffs' giving bond, &c., to replevy said "goods and chattels," and deliver them to the plaintiffs, &c.

The sheriff returned upon the writ, that on the 3d of August, 1853, the day it issued, he replevied and delivered to the said Rufus E. Arnold, the slaves Lizzy and her four children, Eliza, Aga, Ann, and Phœbe—no mention is made in the writ, or the return of the sheriff, of the unnamed infant child of the woman Lizzy, described in the declaration.

At the return term, (Sept. 853.) the defendant filed three pleas : 1*st. Non detinet;* 2*d. Non cepit* (?) and *third,* property in himself, to which issues were made up.

At the September Term, 1854, the death of Mrs. Arnold was suggested, and the cause was ordered to abate as to her, and progress in the names of the other plaintiffs. Whereupon, the cause was submitted to a jury, who returned a verdict that the slaves Lizzy, and her four children, Eliza, Aga, Ann and Phœbe, and also the unnamed child of Lizzy described in the declaration, were the property of the plaintiffs, and assessed damages by way of hire, at $116 66. The court rendered judgment, as follows, upon the verdict :　" It is therefore considered by the court, that the plaintiffs, Rufus E. Arnold, in right of his wife, Mildred M. Arnold, and the said Rufus E. Arnold, as guardian of Samuel Burke, Joel Burke, and Malcom McNeill Burke, minors, do have and retain the possession of the negro slaves in said declaration mentioned, and that they recover of, and from said defendant, Hector McNeill, the sum of $116 66, for their damages sustained, besides all their costs," &c.

The defendant moved for a new trial, on the grounds that the verdict was contrary to law and evidence ; and that the court

erred in its decisions upon a number of points raised pending the trial. The motion was overruled, and the defendant excepted, and appealed to this court.

There being no total want of evidence to sustain the verdict of the jury, upon any material matter in issue, the evidence need not be stated further than may be necessary to understand the several questions of law decided by the court, and complained of as erroneous by the appellant.

1. It is insisted by the appellant, that the suit should have been brought in the name of Nathaniel Glover, and not in the names of the appellees. The appellees claimed title to the slaves, under the following deed, purporting to have been executed by Samuel Burke, &c.

" This deed of bargain and sale, made and entered into, this, the 15th day of March, A. D., 1841, between Samuel Burke, of the county of Christian, and State of Kentucky, of the first part, and Nathaniel Glover, of the county of Lownds, and State of Mississippi, of the second part, and Lucy Ann Burke, of the county of Noxube ,and of the State last aforesaid of the third part, *witnesseth:* That whereas, the said party of the third part, heretofore, *to wit:* on the — day of — A. D., 1834, intermarried with Virgil J. Burke, son of the said party of the first part ; and whereas, the father of the party of the third part upon such marriage gave and conveyed to the said party of the third part, and her said husband, property of great value, which, by misfortune, and bad management of the husband of the party of the third part, has been squandered and spent ; and whereas, the said party of the first part, being desirous and anxious to settle upon and convey to the said party of the third part, and the heirs now begotten, and the heirs to be begotten of her body by the said Virgil J. Burke, the property hereinafter mentioned, to be free from the control, interference, management or debts of the said Virgil J. Burke ; therefore, be it known by this deed, that in consideration of love and affection towards my said daughter-in-law, the party of the third part, and the heirs of her body begotten and

to be begotten by the said Virgil J. Burke, and in the further consideration of the sum of ten dollars cash in hand paid the party of the first part, by the party of the second part, the receipt and payment of which is hereby acknowledged, *have,* the day of the date hereof, granted, bargained, sold and delivered unto the party of the second part, the following described property, *to wit:* One negro woman, *Lizzy,* aged twenty years; one boy, *Thomas,* aged twelve years ; one girl, aged three years; one girl, *Louisa,* two years; one negro boy, *Nathaniel,* aged two months; one wagon, one barouche, one sorrel horse, two dark bay horses, and two feather beds and furniture, to have and to hold, unto the party of the second part in trust, and upon the conditions herein-after mentioned ; that is to say, the said party of the second part has the aforesaid property conveyed to him in trust for the party of the third part, and the heirs of her body to be begotten by the aforesaid Virgil J. Burke ; the said party of the second part binds himself to hire out, at the end of each and every year, said property, and apply the proceeds thereof to the maintenance and education of the children of the party of the third part; or the said party of the second part, if he thinks proper, may permit the aforesaid property to remain in the possession of the party of the third part, and the labor thereof to be appropriated in the education and maintenance of the children of the party of the third part as aforesaid, the proceeds arising from the labor thereof to be kept distinct and separate from the property of the husband of the party of the third part, and free from any control or dominion by him ; and upon the further trust also, that if the said party of the third part shall depart this life, before the heirs of her body aforesaid shall arrive to the age of twenty-one years, then the property aforesaid and all the income thereof, shall be absolutely vested in the said children by the party of the third part left as aforesaid ; but if the party of the third part shall not depart this life, then, in that case, the property before mentioned, and its increase, shall remain in the trustee for the purposes aforesaid, until the youngest child shall become of age, and then an

absolute title shall vest in the said heirs to an equal portion of said property and its increase; and the party of the second part does hereby agree and consent with the other parties to this deed, to do and perform all and every act that may be necessary to carry into full effect this deed. The said party of the second part is hereby vested with full and complete power so to manage the property aforesaid, and the increase thereof, that the same may be subjected and applied as this deed directs.

In witness whereof, the parties to this deed have hereunto set their hands, and affixed their seals, this 15th day of March, A. D., 1841.

his

SAMUEL ✕ BUKE, [seal.]

mark.

NATHANIEL GLOVER, [seal.]

The testimony introduced upon the trial, conduced to prove that the woman *Lizzy* sued for, is the same woman named in the above deed; that the other slaves described in the declaration are her children; that Mrs. Burke, wife of Virgil J. Burke, died in the year 1850, leaving four minor children, *Samuel, Malcom, Joel,* and *Mildred M.*, (who afterwards married Arnold,) and in whose behalf this suit was brought.

It is manifest that, by the terms of the deed, upon the death of Mrs. Burke, the title to the slaves therein mentioned, passed out of Glover, the trustee, and vested absolutely in the children of Mrs. Burke. Upon her death the trust became executed, and there remained nothing for the trustee to do. The action was therefore, properly brought in the names of the appellees. *Liptrot ad. vs. Holmes,* 1 *Kelly* 381; *Jones vs. Cole,* 2 *Bailey's Rep.* 330; *Bradley vs. Hughes,* 11 *Eng. Chan. Rep.* 368; *Tullet vs. Armstrong,* 17 *Eng. Chan. Rep.* 3.

It follows, also, that Nathaniel Glover, the trustee, was a competent witness in the cause, his interest having terminated upon the death of Mrs. Burke. Nor did the court err, in instructing the jury, at the instance of the appellees, against the objection

of the appellants, as follows.  3d. That the right of possession to the negro slaves accrued to the said minor heirs, immediately upon the death of Lucy Ann Burke, by the operation of the deed read in evidence by said plaintiffs ; and that all right and title to said negro slaves immediately vested in said heirs, upon the happening of said event."

2. Did the court err, in permitting the appellees to read in evidence, the original deed of trust, above copied, upon the proof produced by them of its execution ?

To the deed were attached the following certificates :

"THE STATE OF MISSISSIPPI,  }
        LOWNDS COUNTY.              }

Personally appeared before me, Hendley S. Bennett, Judge of the 6th Judicial District for said State, the above named Samuel Burke and Nathaniel Glover, and acknowledged that they signed, sealed and delivered the foregoing deed on the day and year therein mentioned, as their act and deed, and for the purposes therein expressed.

Given under my hand and seal, the 15th day of March, A. D., 1841.

HENDLEY S. BENNETT, [SEAL.]
        *Judge 6th Jud. Circuit, Miss."*

---

"THE STATE OF MISSISSIPPI,  }
        NOXUBE COUNTY.             }

I, John B. Roberts, clerk of the Probate Court of said county, do hereby certify that the foregoing annexed deed of trust was received in my office for record, the 25th day of May, A. D., 1841, and duly recorded in deed book D., pages 466, 467 and 468.   This 8th June, 1841.

Given under my hand and seal of office, at Macon, this the 8th June, A. D., 1841.

JOHN B. ROBERTS, *Clerk."*

To all who shall see these presents, greeting : Be it known, that John B. Roberts, whose name is subscribed to the annexed certificate, was, on the day of the date thereof, clerk of the Probate Court of *Noxube* county, in the State of Mississippi ; that his attestation to the annexed certificate is in due form of law, and made by the proper officer, and that full faith and credit are due to all his official acts.

In testimony whereof, I have caused the great seal of the State, to be hereunto affixed.  Given under my hand at the city of Jackson, this 19th day of May, A. D., 1854.

By the Governor :

[L. S.]                               JOHN J. McRAE.

WM. H. MUSE, *Secretary of State.*"

Before the appellees offered to read the deed in evidence, they introduced Abner A. Stith, who, being sworn, stated that "he was a practicing attorney in the State of Mississippi, at the time of the date of said deed, and it was his opinion that the law of said State, at that time, required such instruments to be recorded. That he had heretofore examined a copy of said deed ; thought it had been properly acknowledged and recorded ; that laws of Mississippi in relation to recording of such deeds somewhat similar to laws of Arkansas."

Upon the certificates attached to the deed, and the testimony of Stith, the court permitted the appellees to read the deed to the jury, against the objection of appellant.  Was it competent for the appellees to prove the registration statutes of Mississippi, by parol, without any showing that a higher grade of evidence could not be obtained ?

In *Barkman vs. Hopkins et al.*, 6 *Eng. R.* 168, Mr. Justice WALKER, said :  " The plaintiff offered the deposition of one skilled in the laws, and familiar with the practice of the State of Louisiana, and also the laws of the State of Louisiana, purporting to be pub-

lished under the authority of the State, which were objected to as incompetent. The particular grounds of the objection are not pointed out. The deposition appears to be regularly taken, and we think the evidence competent legal evidence for the purpose of proving the laws and practice of that State, which before the Circuit Court upon the trial of the case required to be proven as any other fact necessary to sustain the issue. *McRea vs. Malton,* 13 *Pick.* 49, is in support of this opinion. Upon this point we think there was no error."

We do not understand the court as intending to decide, in this case, that the *statute* or *written* laws of Louisiana, were properly proven by parol. The case of *McRea vs. Malton,* 13 *Pick.,* referred to in the opinion, does not so hold. In that case the court said : " The defendant has objected to the mode of proof, *viz :* by the evidence of witnesses, that the proceedings were according to the law of the State of North Carolina, and that by the law of that State, and *usage there,* the defendant was so far a party to the record against the principal, as to be bound to take notice of the proceedings against him, and also, of the subsequent proceedings against himself, as the bail. Now, we think it too clear for argument, that it was competent for the plaintiff to prove by witnesses that such was the law of North Carolina. *It was the only way to establish it here, for it was their common unwritten law,* proveable here as matters of fact are to be proven. And upon recurring to the evidence, it was very clearly established, not only by the opinion of witnesses, who were of the profession, and in the practice of the law, but by the judicial decisions of the court there, in *Woodfork vs. Broomfield,* 1 *Murphy* 187."

By referring to the transcript on file in this court, in the case of *Barkman vs. Hopkins et al.,* we find that the witness, who gave the deposition referred to in the opinion of the court, and who was a practicing attorney of Louisiana, stated that, by *law, usage, practice* and *decisions* of the courts of Louisiana, service of citation on one of the partners of a firm, authorizes proceedings and judgment against the members of the co-partnership, &c.

Messrs. *Watkins & Curran*, the counsel who argued the case in this court, in favor of the competency of the deposition, said:

" The unwritten *law, customs* and *usages* of a foreign country, or another State, may be proved by parol. 3 *Phil. Ev.* 1142, *and cases cited*, 6 *Cranch.* 274 *;* 15 *Serg. & Rawle* 84 *;* and it does not appear that the law, under which the service upon one partner is good service upon the firm, was in writing; and the laws of Louisiana were also proved by the printed statutes, under our statute."

In the case now before us, it must be understood that Stith testified as to the statutes of Mississippi, because, the registry system, both in England, and in the States of this Union, is statutory.

STORY, in his CONFLICT OF LAWS, *secs.* 640, 641, 642, 643, 644, says: " The general principle is, that the best testimony or proof shall be required which the nature of the thing admits of: or, in other words, that no testimony shall be received which presupposes better testimony attainable by the party who offers it. And this applies to the proof of foreign laws, as well as of other facts. * * * *. Generally speaking, authenticated copies of written laws, &c., of a foreign government, are expected to be produced. For it is not to be presumed that any civilized nation will refuse to give such copies duly authenticated, which are usual and necessary for the purposes of administering justice. It cannot be presumed that an application to authenticate an edict or law will be refused; but the fact of refusal must be proved. But if such refusal is proved, then, inferior proofs may be admissible. *Curch vs. Hubbart*, 2 *Cranch.* 237. * * * * The usual modes of authenticating foreign laws (as of foreign judgments) are, by an exemplification of a copy, under the great seal of the State ; or by a copy proved to be a true copy, or by the certificate of an officer authorized by law, which certificate must itself be duly authenticated. * * * * But foreign *unwritten laws, customs and usages*, may be proved, and indeed must ordinarily be proved by parol evidence. The usual course is to make such proof by the testimony of competent witnesses, instructed in the law, under oath." But, fin-

ally, adds the same author: "The mode, by which the laws, records, and judgments of the different States composing the American Union, are to be verified, has been prescribed by Congress, pursuant to an authority given in the Constitution of the United States," &c.

In *Robinson vs. Clifford*, 2 *Wash. C. C. Rep.* 2, the court, said: " The statute or written law of foreign countries, should be proved by the law itself, as written. The common, customary or unwritten law may be proved by witnesses acquainted with the law.

To the same effect are the following authorities. *Packard vs. Hill*, 2 *Wend.* 411 ; 4 *Hill & Cowen's Notes to Phil. Ev., part* 2, *page* 330, *and cases cited; Livingston vs. Mar. Ins. Co.,* 6 *Cranch* 274; *United States vs. Otega*, 4 *Wash. C. C. Rep.* 533, *Dougherty vs. Snyder*, 15 *Serg. & Rawle* 87 ; *Kinney vs. Clarkson et al.,* 1 *John. Rep.* 394; *Hemphill vs. The Bank of Alabama,* 6 *Sm. & Mar.* 50; 1 *Ib.* 177; *Camparret vs. Jarnegan,* 5 *Blackf.* 375; *Tyler vs. Trabune,* 7 *B. Mon.* 306 ; 7 *Monroe* 584 ; *Gardner vs. Lewis,* 7 *Gill Rep.* 379

Mr. GREENLEAF, in his work on EVIDENCE, *vol.* 1, *secs.* 486, 487, 488, 489, states the law on the subject to be as stated by Story in his *Conflict of Laws,* above copied, but in a note to *sec.* 487, he cites the case of *Baron De Bode vs. Reginam,* 10 *Jur.* 217, where it was held in an English Court, that it was competent for a learned French Advocate to prove a decree of the National Assembly of France, without an attempt to obtain a copy of the law itself.

Whatever respect may be due to this decision, it is well settled by the current of decisions in this country, that where it is necessary to prove the statutes of one State in the courts of another, they must be produced, but that the unwritten laws, custom, usage, practice, &c., may be proven by the testimony of witnesses skilled therein.

The 1st *section of the 4th article* of the Constitution of the United States, declares that "full faith and credit shall be given in each State, to the public *acts*, records and judicial proceedings of every other State ; and the Congress may, by general laws,

prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." The act of Congress of May 26th, 1790, passed in pursuance of this clause of the Constitution, declares, that " the acts of the Legislatures of the several States shall be authenticated by having the seal of their respective States affixed thereto." *Digest ,page* 87. But this method of authentication is not regarded as exclusive of any other mode which the States may respectively adopt. 1 *Greenl. Ev., sec.* 489. Hence, our Legislature has provided, that "the printed statute books of the several States and Territories of the United States, purporting to have been printed under the authority of such States or Territories ,shall be evidence of the legislative acts of such States or Territories." *Digest, page* 490 ; see *Clark vs. Bank of Miss.*, 5 *Eng. Rep.* 516 ; *May vs. Jameson*, 6 *Eng. Rep.* 377; *Dixon vs. Thatcher*, 15 *Eng. Rep.* 141. And the Legislature has further provided, that "copies of any act, law or resolution, contained in the printed statute books of any of the States and Territories of the United States, purporting to have been printed by authority, and which are now, or may hereafter be, deposited in the office of the Secretary of this State, and required by law to be kept, certified under the seal of the Secretary of State, shall be admitted as evidence." *Digest, page* 490.

These several modes of procuring authenticated copies of the statutes of our sister States, when required as evidence in our courts, are so ample that there can be no necessity of resorting to parol testimony to prove them, the accuracy of which depends so much upon the memory, skill, &c., of the witness.

The court below, therefore, erred in permitting the deed of trust to be read in evidence to the jury, with no other proof of its execution than the certificates attached and the testimony of Stith. *Dixon vs. Thatcher et al.*, 14 *Ark. Rep.* 147; *Wilson vs. Royston*, 2 *Ark. Rep.* 327 ; *Stevens et al. vs. Bomar*, 9 *Humphreys's* 546 ; *Brown vs. Hicks*, 1 *Ark.* 233.

The court below did not err in refusing to sustain the motion of the appellant to exclude the deed, because it had not been re-

corded in this State. This was not necessary in order to protect the rights of Mrs. Burke and her children. *O'Neill vs. Henderson*, 15 *Ark. Rep.* 235

The *6th instruction* moved by the appellant, and refused by the court, relates also to the proof of the execution of the deed. The first clause of the instruction, that "the plaintiffs must introduce the best evidence to prove the deed of trust, that the nature of the case will admit of," was correct as a general principle of law, and applicable, as we have seen, to the mode of proving the registry acts of Mississippi.

The second clause of the instruction, is as follows: "That a certificate made by the Clerk and the Governor, and an acknowledgment of said deed in the State of Mississippi, is not the best evidence; but there must be *first direct proof of the original*, or the loss of the original, before the certificate of the Clerk and Governor will be admitted, as evidence in this case."

There being no competent evidence to prove that the laws of Mississippi authorized the registration of such deeds, the certificates attached to the deed in question amounted to no proof of its execution.

Had it been proven that the laws of Mississippi authorize the acknowledgment and recording of such deeds, and make the original deed with the certificates of acknowledgment and registration attached, or a certified copy from the record, admissible as evidence without further proof of execution, the original deed, with such certificates, or a copy from the record, when properly authenticated under the act of Congress, of March 27th, 1804, (*Digest, chap. on Authentication, sec.* 2,) would, by virtue of that act, have the same faith and credit, as evidence in our courts, as they have by law or usage in the courts of Mississippi. *Swift vs. Fitzhugh*, 9 *Porter* 39; *Smoot vs. Fitzhugh, Ib.* 72; *Mitchell vs. Mitchell*, 3 *Stew. & Port.* 81; *Tatum vs. Young*, 1 *Porter* 310; *Owings vs. Hull*, 9 *Peter's Rep.* 627; *Lee vs. Matthews*, 10 *Alabama* 62; *Rochester vs. Toler*, 4 *Bibb.* 106; *Pennel's Lessee vs. Weyant et al.*, 2 *Harrington* 505; *Henthorn vs. Doe*, 1 *Blackf.*

12c

159; 1 *Greenl. Ev.*, sec. 484; *Buckmaster et al. vs. Job*, 15 *Illinois Rep.* 328.

It is insisted by the appellees, that the execution of the deed of trust was sufficiently proven by the testimony other than the certificates attached thereto. It is true, that after the deed was admitted in evidence by the court, upon the certificates of acknowledgment, registration and authentication thereto appended, Nathaniel Glover, the trustee in the deed, and the second witness introduced by the appellees, testified that Samuel Burke signed the deed, that he executed it, &c. That witness was present when he acknowledged it before Judge Bennett, &c. Though it was irregular and contrary to the usual practice for the court to permit the deed to be read to the jury, until some competent proof of its execution had been produced, yet, if it was sufficiently proven after its admission, the irregularity was cured, and no injury resulted to the appellant of which he could complain here.

It is insisted by the appellant, that the grantor in the deed, or Judge BENNETT, before whom it purports to have been acknowledged by him, was more competent to prove its execution than Glover. That his testimony was of an inferior grade. There is nothing in this objection. There being no subscribing witness to the deed, if Glover saw it executed, he was as competent to prove the fact as the grantor, or Bennett. It would be a question of credibility between the witnesses for the jury to determine, and not of competency. The question of superior and secondary evidence does not arise in this instance at all.

But there is another decision of the court that must be considered in connection with the proof of the execution of the deed. The appellant took the deposition of Samuel Burke, by interrogatories. There are five interrogatories and responses thereto; the 2d, 3d and 4th of which the court suppressed upon the motion of appellees, on the ground that the interrogatories were leading, &c., and appellant excepted. The deposition is as follows:

"*1st. Question :* Examine the paper marked A, and state if it is,

or not, a bill of sale executed by you to Hector McNeill, for certain slaves therein mentioned ?

*Answer:* I believe it to be the same bill of sale, I executed to Hector McNeill."

(The bill of sale here] referred to is a quit claim bill of sale from the witness to McNeill, for the slaves Lizzy, and her children, Louisa, Aga, Eliza, Phœbe and Ann, dated 21st July, 1851, reciting that Virgil J. Burke had purchased Lizzy, the mother of the children, from one P. Allen, of Monroe county, Mississippi, and taken the bill of sale of Samuel Burke, dated 16th of October, 1840, and had of late sold the slaves to McNeill.)

"*2d Question :* State if you ever executed a deed of gift for the negroes mentioned in said bill of sale, or any of them to the heirs of Virgil J. Burke, or any other person ?

*Answer:* I never did, to the best of my recollection.

*3d Question* : Did you, or not, ever have any interest in said slaves, except by a bill of sale executed to you by P. Allen, at the instance of Virgil J. Burke, and without your knowledge ?

*Answer:* I never had any interest in them, other than the bill of sale, and that I have never seen, and know nothing of it only by hearsay.

*4th Question :* Did you or not ever pay any thing for said slaves ?

*Answer:* I never did.

*5th Question :* Did or not Virgil J. Burke tell you he had bought said slaves, and had the bill of sale made to you to prevent his creditors from taking them?

*Answer:* He told me he took the bill of sale in my name, but did not state his object."

What constitutes a leading question was well enough defined in *Clark adx. vs. Moss et al.,* 6 *Eng.* 741. Where the question indicates to the witness the answer it is desired he should make, or furnishes him with one favorable to the point sought to be established by the examiner, it is leading. See, also, *Pleasant vs. The State,* 15 *Ark. Rep.* 624 ; *Rogers vs. Diamond,* 13 *Ark.* 473.

The *second* interrogatory was not leading. The *third* was. The *fourth* was not. The *fifth*, though not suppressed by the court, was clearly leading.

The *second* interrogatory and response, related to the execution of the deed of trust by Samuel Burke. He states that he never did execute it, to the best of his recollection. Glover testified that he did. The statement of both of them should have been submitted to the jury, and it was their province to pass upon the relative credibility of the witnesses, and to determine the truth of the matter, from all the testimony before them, relative to the execution of the deed.

*3d.* The next question arising upon the record is, whether the appellees should have demanded the slaves of appellant before suit.

The testimony conduces to prove, that Virgil J. Burke and wife removed from Mississippi to Arkansas, in the year 1849 or 1850, bringing the slaves with them. That on the 16th of April, 1851, and after the death of Mrs. Burke, Virgil J. Burke sold the woman Lizzy, and her children, Louisa, Aga, Eliza, Phœbe and Ann, to McNeill, the appellant, for $2050, executing to him a bill of sale therefor. That, from the time McNeill purchased the slaves until the bringing of this suit, he claimed, managed and controlled them as his own property, and that during the time, he offered to sell one of them to one of the witnesses. No demand was proved.

At the instance of the appellees, and against the objection of appellant, the court charged the jury as follows : *2d.* "If the jury believe, from the evidence, that the said defendant exercised such acts of ownership over the said negro slaves, at the time of, or before the institution of this suit, as to be inconsistent with plaintiffs' title to the same, it waives a necessity of a demand for the same."

On the same point the appellant moved the following instructions: *3d.* "If the defendant purchased the negroes for a valuable consideration, supposing that he was acquiring a good titl' demand must be made before the action will lie."

*8th.* "If·the jury believe, from the evidence, that the defendant was a *bona fide* purchaser of the slaves in controversy for a valuable consideration, and has exercised no acts of ownership over said slaves to defeat the plaintiffs in their claim, demand of the slaves is necessary before the action will lie, and without it the jury must find for the defendant "

Each of these instructions the court gave, with the following qualification : " Unless the defendant did acts inconsistent with the title of the plaintiffs, by selling or attempting to sell, or any other act not consistent with the plaintiffs' title, then no demand was necessary."

In the case of *Pirani vs. Barden*, 5 *Ark. R.* 81, it was doubted whether replevin in the detinet would lie, except in cases of bailment, actual or constructive, under our statute ; and it was held that a demand must be averred and proven in this form of action.

In *Beebe vs. DeBaun*, 3 *Eng. Rep.* 562, the case of *Pirani vs. Barden*, was reviewed, and it was held that the action was not confined to cases of bailment, but that the right of immediate possesssion on the part of the plaintiff, and an unlawful withholding by the defendant were sufficient to maintain the action. It was furthermore held that, even in cases of bailment, demand was not always necessary ; that proof of conversion on the part of defendant, or of acts amounting to conversion, would dispense with proof of demand. The doctrine of this case has been repeatedly approved by the subsequent decisions of this court. See *Phelan vs. Bonham*, 4 *Eng. Rep.* 389 ; *Cox et al. vs. Morrow*, 14 *Ark. Rep.* 609.

In *Beebe vs. DeBaun*, Mr. Chief Justice JOHNSON remarked : " We think that under a fair construction of our statute, where a party innocently purchases property, supposing he should acquire a good title, he ought not to be subjected to an action, until he has an opportunity to restore the goods to the true owner," &c. This remark, however, was but an *obiter dictum*.

In *Prater adm. vs. Frazier & wife*, 6 *Eng. Rep.* 257, the de-

fendant moved the court to instruct the jury, " that when a party comes lawfully and peaceably into possession of property, which he treats as, and believes to be his own, he cannot be sued for the same, without a previous demand therefor," &c.

In commenting upon this instruction, this court, by Mr. Chief Justice JOHNSON, said : " The very reverse of the instruction would seem to be the law. . Where a party comes lawfully and peaceably into the possession of property, which he treats and believes to be his own, instead of entitling himself to a demand before suit, he most clearly forfeits such right," &c.

In *O'Neill vs. Henderson*, 15 *Ark.* 235, the separate property of the wife was levied upon and sold for the husband's debts ; and it was held that her trustee could bring detinue against the purchaser without demand.

In cases of bailment, the possession of the bailee is deemed in law the possession of the bailor, and in order to terminate the relation of bailor and bailee, and put the latter in the wrong so as to maintain an action against him for the goods bailed, there must be a demand and refusal, or a conversion of the goods by the bailee, which is equivalent to demand and refusal. *Liptrot adm. vs. Holmes*, 1 *Kelly* 391, and cases cited.

In the case before us, there was no bailment, actual or constructive, according to the evidence. The very act of purchasing the slaves by McNeill, was at war with any title the appellees may have had thereto, and his subsequent possession was adverse to their claim.

It is true, that the declaration alleges a bailment, but this, like the allegation of finding in trover, is not a material averment. *Beebe vs. DeBaun; Cox et al. vs. Morrow.*

If the demand was necessary in order that appellant might have had an opportunity of surrendering up the slaves, and avoiding costs of an action, demand would be necessary in most cases, where a cause of action accrues to one against another.

4th. The court refused to charge the jury, on the motion of appellant. 7th. that, "if the jury believe, from the evidence, that

Virgil J. Burke had peaceable possession of the negroes for five years previous to the sale to Hector McNeill, the law vested such a title in Burke as made his sale of said negroes to the defendant in this suit, a valid one."

Glover testified that, immediately after the execution of the deed, he delivered the slaves to Burke and wife, upon the instruction of Samuel Burke, to wait on them.   That they remained in possession of the slaves, some eight years, when Virgil J. Burke moved to Arkansas, with the negroes in his possession, and afterwards sold them to McNeill, &c.

Where the wife has a separate estate in slaves, and the husband and wife live together, the possession of the husband is the possession of the wife.   *Lee vs. Matthews*, 10 *Ala. Rep.* 682.

5.  *Glover*, in his examination in chief, by the appellees, testified as follows:   " Old Samuel Burke, after he had bought the negroes mentioned in the deed, sent them through me to Virgil J. Burke and his wife ; the money with which I purchased said negroes, was sent to me by old Samuel Burke.   I purchased said negroes under his orders, and after they were purchased, he being informed came down and executed the deed.   Old Samuel Burke then resided in Kentucky ; his son, Virgil J., lived in Lowndes county, Mississippi.   The old man came to my house, got me to go to Judge Bennett, who wrote the deed, &c., &c.   In the first place, after I bought the negroes mentioned in said deed, and took them home, Samuel Burke came a few days afterwards, and told me to give the negroes to Virgil J. Burke and his wife, to wait on them.   I did so, after the deed was executed," &c.

On *cross-examination* by the appellant, Glover stated further : " I purchased said negroes, and took a bill sale for the same in said Samuel Burke's name."   (Defendant thereupon moved to exclude all the parol testimony in relation to the purchase of said slaves, because said bill of sale was not offered in evidence, or its absence accounted for ; which motion was overruled and defendant excepted.)   " Old Samuel Burke sent me by Mrs. Virgil J. Burke, $1000, and wrote me a letter, telling me that he had

sent the money by Mrs. Burke, to buy as many negroes as the money would purchase. I gave $900 of the money for Lizzy, and her children, &c. When Samuel Burke wrote to me, I recognized his signature which was a mark different from other persons, being a kind of V turned up.

It seems also that appellant moved the court to exclude the evidence of Glover in reference to his agency for Samuel Burke, unless the letter which he referred to, was produced, or its non-production accounted for ; but the court overruled the motion and appellant excepted.

The court, upon the motion of appellees, and against the objection of appellant, instructed the jury as follows: 1st. "If the jury believe, from the evidence, that Samuel Burke executed the said deed introduced by the plaintiffs for the negroes, and for the purpose therein mentioned, and that the negroes sued for are a portion of said negroes, or the increase of the same, and that, at the time of the execution of said deed, the said negroes were the property of the said Samuel Burke, they must find for the plaintiffs. And that the possession of said negro slaves by the said Samuel, either by himself or his agent, at the time of the execution of said deed, is *prima facie* evidence of the said Samuel being owner thereof, and that the burden of proof devolves upon the defendant to rebut the same."

No controversy arises in relation to the correctness of this instruction, except as to the last clause of it, and there can be no doubt of its being substantially correct.

Where a party suing for a chattel, proves that he purchased it from one in possession of it, he makes a *prima facie* case of title, and the *onus probandi* is shifted to the opposite party. And as a general rule, the possession of the agent is the possession of the principal.

The appellant moved, also, the following instruction: 4th. "The best evidence must always be given to substantiate any fact that the nature of the case will admit of. If Glover acted as agent of Samuel Burke, and bought the negroes in the deed of

trust, and took a bill of sale for them at the time, in the name of Samuel Burke, the bill of sale is the best evidence and must be produced, or the loss or absence of it accounted for, before parol, or secondary evidence is introduced; and without such bill of sale or such accounting, the jury will not consider the parol proof as to the sale to Samuel Burke."

The court refused to give this instruction, remarking to the jury, that the court thought it not material whether Glover took any bill of sale to Samuel Burke or not, and that the bill of sale had nothing to do with plaintiff's claim of title.

Glover, in his examination in chief by appellees, swore that he purchased the slaves for Samuel Burke, but said nothing about taking a bill of sale for them. The appellant on cross-examination, called out the matter about the bill of sale. If, by showing that Glover took a bill of sale to Samuel Burke for the slaves, the appellant could compel the appellees to produce it, or account for its non-production, they might also have shown that the person of whom Glover purchased, had a bill of sale from some other person, and require that to be produced, &c., and so on without limit.

The appellant also moved the following instruction, which the court refused : 10th. "The plaintiffs must prove that Samuel Burke had the negroes in his possession either by himself or agent; if by agent, that agency must be proved, and if that agency was by letter, or other writing, the writing or letter must be produced, or accounted for before parol proof of that agency will be admitted."

There can be no question but that, if the authority of an agent is shown to be in writing, the writing must be produced and proved, or its non-production accounted for, in order to admit secondary evidence of the agency. 2 Greenlfs. Ev., sec. 63.

6th. It is moreover assigned for error, that the court erred in rendering judgment in favor of Rufus E. Arnold in right of his wife.

When the suit was brought, Mrs. Arnold was in life, and the action being for the recovery of outstanding chattels, in which

she claimed an interest jointly with her brothers, it was proper to join her husband in the suit.   *Cox et al. vs Morrow.*

Before her  death, the return of the sheriff upon the writ shows that he delivered to Arnold the slaves *Lizzy*, and her four children, *Eliza, Aga, Ann and Phœbe,* and upon the trial, the sheriff testified, that he also took from the appellant, and delivered to Arnold at the same time, the unnamed infant child of *Lizzy,* described in the declaration. Thus, before the death of Mrs. Arnold her husband reduced the slaves into his possession, and thereby, we must hold for the purposes of this suit, perfected his title to his wife's interest in the slaves.   *Cox et al. vs. Morrow.* The judgment was, therefore, in good form.

There was, it is true, a variance between the declaration and the writ, in reference to the number of negroes sued for, the writ omitting the unnamed infant, but the defendants pleaded in bar of the action, without attempting to take advantage of the defect in the writ.

But, for the errors of the court above indicated, the appellant was entitled to a new trial ; and the cause is therefore reversed, &c.